May it please the Court, Gail Ivins, appearing on behalf of plaintiff, defendant-appellant Mr. Ira Vincent Spearman. In this case, Your Honor, Mr. Spearman has persistently, consistently, and diligently, through counsel and also pro se, sought to change his life sentence to one reflective of District Court Judge Trebrizion's judgment of what his offense and priors were actually worth, which was something between 10 and 30 years. He appealed, he filed a 2255, he sought from this Court leave to file a successor 2255 petition, and after the original Carrington decision was issued, within approximately two months, he filed the motion seeking to have Judge Trebrizion request that this Court recall its mandate from his earlier appeal so that he could be resentenced. This appeal is in the nature of a plea to this Court's inherent power to recall the mandate from the earlier appeal and to allow a person who would now be a new District Court judge, Judge Trebrizion has retired from the Federal bench in the Central District, to consider anew the sentencing of Mr. Spearman. Now, this is an odd sort of an appeal because when this went to Judge Trebrizion, it was asking him to request us to repeal the mandate. I guess we should probably treat this straightforwardly as a request to this Court to recall its mandate. I think that's correct, Your Honor. I think the government is correct in that. I think that what Mr. Spearman, who filed the original motion pro se, had before him was Carrington, which was an appeal on other bases, including the District Court judge's basically suggestion to this Court, and Crawford, where it was done sua sponte. But Mr. Spearman does not seem to have been aware of Crawford when he litigated this before the District Court. Okay. Now, before we go further, let me say something that this panel has not yet decided, and there's some, I think, slight ambiguity in our Court's rules. And it has belatedly occurred to this panel that perhaps this request to recall the mandate should have gone to the original panel whose mandate is at issue. And that's not your affair. It's our affair as to how to route this. But I want to alert you that the panel is at least considering, after hearing the argument here, I think it's absolutely worthwhile doing the argument today, we are considering the possibility that for the purposes of our own internal administration that this perhaps should be transferred to that original panel. I just wanted to highlight to you that possibility before we get too deeply into this.  Yes. And actually, Your Honor, on a related note, one of the requests other than asking the Court to just straight out recall the mandate that I was going to make today is to consider whether it wouldn't be appropriate essentially to remand consideration to the District Court, because we do now have a different District Court judge who will by necessity hear this matter. Well, but I don't think the District Court has any power to recall our mandate. The District Court might have some, I guess, informal or inherent power to request us to do so. And that would be the extent of the power would be to basically what we have before the Court now in terms of in support of the equities that would support recalling the mandate, we have Judge Terizian's statement on three separate occasions as to what he thought the case was worth and why he thought the sentence was too harsh, at the original sentencing, at the subsequent resentencing, and in his order in considering the motion in this case. We have his repeatedly expressed misgivings. We have the Petitioner's diligence. He has been perhaps more diligent than most Petitioners I have known. May I ask a question in that connection? There's no particular reason why you would know the answer, but if you do, I'd be interested. Do we have any idea how many people there would be in Mr. Spearman's situation who are currently incarcerated for life without possibility of release for this offense? Your Honor, if we just look at how many individuals are incarcerated for life under the mandatory minimums where we have not a judicial or not a jury finding on the amount, I think it's a much smaller group than people exactly in Mr. Spearman's situation. And I have looked for cases that are similar, and there have been concerns expressed, I know, in Carrington and then Judge Pragerson's dissent on that, discussing where the floodgates are, and there don't seem to be any. As far as I know, this is the one case pending in this Court that raises this issue for an individual with Mr. Spearman's set of facts. Many of the cases, of course, with crack cocaine are being addressed in connection with the retroactive guideline amendment. And so that's sort of a whole different class of people, and those we have literally hundreds in our district that are being mitigated now. I'm wondering about those where there's presumably non-retroactivity, but there's a mandatory minimum. Maybe the government has some information about that. They may have more information. I know that the tracking systems for the Sentencing Guidelines Commission, which is where we would get that information, or the Department of Justice would be the best places to go to answer that question. So what's your best argument as to whether we ought to, we or perhaps the panel that did it, ought to recall the mandate? Well, my best argument is that Crawford would allow it by its terms. It's the law of the circuit. We have one of the facts repeated three times, which is the district court's expression regarding what he thinks is appropriate. The additional factors, although we don't have the timing, the second factor in Crawford is that while we've been on appeal, the guideline at issue has been made retroactive. And so we do have a change in the law that is potentially relevant to this case. But you're going to have to get out from under, at least if I understand the case correctly, the statutory mandatory minimum, and the change in the guideline doesn't help you. It does. The change in the guidelines potentially helps us, although I do not believe any court yet has ruled on this argument. In what way? The structure of the criminal. Counsel, I was going to say, I'm having trouble understanding how the guideline change alters the mandatory minimum. The guideline change does not, by its terms, alter a mandatory minimum. The way sentencing is set up under 3551, I think, is that the court first calculates a guideline range. And that is how it has always been. We don't jump to the mandatory minimum first. That comes in Chapter 5 at the very end when it trumps a properly calculated guideline range. Therefore, 3582C2 is applicable to this case, is my position, which says if a sentence was based on a guidelines calculation, which this case was. I mean, most of the ink spilled on sentencing was all about guidelines calculations. Not, I mean, Judge Turullian doesn't even mention the mandatory minimum at the first sentence. He just imposes that sentence. So that we would qualify that basically 35, that section gives us the entree to make the application to the district court for recalculation of the guideline range. Hicks from this court recently says that once you are in that place, then you are entitled to a full resentencing with the benefit of the advisory guidelines rather than the mandatory guidelines. And my position in the district court, if we get to that point, will be that we are also entitled to the benefit of apprendi, that that's a constitutional rule and it will be applied in the first instance because we will be resentenced under 3582C2. And so at that point, we don't have a mandatory minimum. Let me see if I can understand this, though. As I understand what happened in front of the district court here, the district court found that the quantity of drugs exceeded 50 grams and, therefore, the statutory mandatory minimum applied. Yes. How do you get out from under that? The jury instructions, as often was the case in 1995, required the jury to only find that there was a measurable quantity. Right. So the short answer is apprendi, right? Yes. The short answer is apprendi. And, of course, we know apprendi is not retroactive. Oh, sorry. Judge Gould. Yeah. If apprendi is not retroactive, then how does it alter the statutory maximum? I don't need apprendi to be retroactive if Hicks remains good law. And if the rule that Booker applies at a 3582C2 resentencing, the logic of that decision from this court suggests that apprendi would apply at such a resentencing. So it's not really a retroactive application. It's an application at a brand-new resentencing that would be occurring today in 2008. Help me out with Hicks. What's Hicks say? I've got apprendi in my head. Hicks I don't have in my head. Hicks was a case where they changed by two points one of the gun statute guidelines, which I now don't remember off the top of my head. And he filed the proper 3582C2 motion to have his, you know, guideline sentence redone. And the government argued that he couldn't have a full Booker resentencing, that he was limited to just getting those two points off his sentence. That case went up to this court, and in Hicks this court held that, yes, you can't have mandatory guidelines under a resentencing under the provision of the guidelines, but advisory guidelines for everything else. And, therefore, the guidelines were now advisory, and there would be a complete resentencing. The judge had discretion to recalculate a new and to impose a new sentence. Okay. Now, you've run over time. Let's hear from the government. But we'll make sure we give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. My name is Ann Voigt, and I represent the government in this case. With respect to the argument the defense counsels raised for the first time in front of this panel, I note that Hicks was not a case cited in the opening. You've got a soft voice. If you could speak a little more loudly, please. Certainly. I apologize. With respect to the Hicks argument that defense counsel is raising for the first time in front of this panel at oral argument, I'd note that that was not an argument made in the opening brief, nor was it one that made an reply. So I would note essentially on the fly that this is not a case where we've had a motion filed under 3583C2 to essentially engage in what would be a moot exercise of recalculating guidelines, calculations that were effectively irrelevant in the first round because of the mandatory minimum. Essentially, it is another route in an attempt to get Apprendi to apply to a case where it plainly does not. This is a case where the mandate issued well before Apprendi was ever decided. This is a case that is very hard to distinguish from any other case in which the mandatory minimums apply and in which someone might attempt to file another motion to recall the mandate, regardless of the length of time that it expired, between the time the conviction was originally affirmed and now. And we think that in that respect we need to be careful. Counsel, counsel, I have a question. Is there any question whether we should treat this as a motion to recall mandate given that it's an appeal from a denial of a motion asking for that recommendation? So, you know, it seemed like both the appellant's brief and the government's brief tell us to just view it as if it was a motion in our court to remand the or to withdraw the mandate. But the procedural setting is really different than that. Yes. We acknowledge the ambiguity in the procedural posture of this case. I mean, it's hard to imagine what this Court would do. I mean, in essence, we're reviewing a decision by District Judge Teresian to recommend to this Court whether or not it should recall the mandate. He had no power to force this Court to recall the mandate. However, because this Court does have inherent jurisdiction to decide a motion to recall the mandate, this Court can certainly construe the appeal simply as a motion. And are you willing to have it so construed? Yes, we are. Okay. I think effectively, you know. Okay. Well, then we'll treat it that way. So your view is that the mandatory minimums are controlling because Apprendi's not retroactive. That's correct, Your Honor. And a number of courts have held that one cannot use a motion to recall the mandate, particularly absent extraordinary circumstances, to get around the restrictions that apply on habeas. And we would argue that one of those restrictions is whether or not a case applies retroactively. In the interest of fairness, we think it can't be that this Court would recall a mandate in this particular case when other petitions raising similar issues on habeas have been denied because Apprendi is not retroactive. Essentially, it's an attempt to do an end run around the restrictions that exist on habeas review. And for that reason, we think that the motion should be denied. And is the government's position that the mandatory minimum applies because the cocaine base in this instance was all for distribution? Yes, it is, Your Honor. And we would note, moreover, that even if this Court were to recall the mandate as we went on to analyze, that doesn't necessarily end the analysis. To say that Apprendi applies doesn't necessarily mean that it rose to the level of plain error in this case. And we refer to, we relied in this instance on the Supreme Court case, the United States v. Cotton, in which the Court analyzed it under the fourth prong of plain error review to affirm a conviction in that case, despite the presence of Apprendi error. We would argue here that it could be upheld under either the third or fourth prong because the evidence of the drug quantity was overwhelming. The only dispute as to quantity at trial was whether it was in fact his or not. It wasn't whether there was 50-plus grams. And then, as you saw at sentencing, the debates in both the initial sentencing and then the resentencing had to do with whether one could artificially carve out some portion for personal use. And the district court was repeatedly presented with that. And despite his discomfort, which he expressed with the mandatory minimums, he refused to do so because he simply thought the evidence did not support it. It was evidence that this court, in affirming the resentencing, concluded was overwhelming. Help me out again. You went by it, but help me out again maybe by going through it more slowly. Assume, and this is just an assumption, assume that we can look at an Apprendi violation and assume that we hold that there is an Apprendi violation. Those are heroic assumptions in this case, but assume that. What happens when we have a case like this one where in order to get below the amount for mandatory minimums, the jury would have had to disregard the amount found in the threshold. In other words, would have had to hold that both of those two amounts, bedroom and living room, were for personal use. What's the harmless error standard for Apprendi? I believe the harmless error standard was set forth in Washington v. Raquenco. Although, we believe in this case it would be plain error because although there's a... Or plain error. Just tell me what the error standard is. How do we review it when there's been an Apprendi error? Do we automatically send it back for a jury trial on quantity or is there something else that happens? No, this is not a case. Essentially, the court would look at whether there was prejudice to his substantial rights and whether there was a miscarriage of justice. And we'd submit that in doing that, the court looks at the evidence that was presented at trial and the evidence that was presented at sentencing to determine whether in fact that standard is met. We'd submit that it was not because, as you point out, it would require one to find that even though all the evidence there supported the position that this was for distribution, the defendant had a large amount of cash in his house. None of the cocaine was broken down into actual amounts of use, which are, as I understand it, in tenths of a gram as opposed to three or four grams, which was, I believe, the smallest one was approximately four grams, the smallest block that was found. They found no paraphernalia used for drug use. Even though he'd been on probation, there was no evidence that he in fact was a user. All of those, I think, would support the conclusion that this doesn't rise to the level of plain error in this case. With respect to one additional issue, this court asked defense counsel whether this should go to the original panel. This was an issue that the government looked at, and we weren't able to find any particular guidance on that point. It doesn't appear to be addressed in the rules, so I would believe that it remains in this panel's discretion to do. Well, it may be in our sort of internal customs, and it may be in the rules. We've begun to look into this. It occurred to us rather belatedly that, in fact, this perhaps should have gone to the original panel, whose mandate is at issue. And to the extent that it may be here by mistake, it's certainly not the mistake of either of the parties here, right? Yeah. And we would have no objection to the court either deciding it itself or deciding to refer it to the original panel. Okay. If there are no further questions, I'd be happy to submit. I want to be sure that I understand what the government's position is with respect to plain error here. Is it that the evidence is so, quote, overwhelming that there's nothing more to be considered? It is, Your Honor. With respect to the analysis in Cotton, I note that in Cotton, the Supreme Court framed the issue as whether the evidence was overwhelming and uncontroverted. And while here the defendant did contest at sentencing the amount of the claim that should be attributed to him. Cotton wasn't a life sentence, was it? I don't believe it was, Your Honor. Does that make a difference? I think the life sentence here is properly viewed as a reflection of defendant's convictions. He had four prior felony convictions for drug offenses, none of which have been challenged and, indeed, properly can't be under Almendarez-Torres. That, I think, is what really drove, in addition to quantity, the life sentence in this case. Well, I understand the sentencing pattern, but I wondered, don't we look at cases involving a life sentence with rather special scrutiny? I'm not aware of cases holding that it's entitled to special scrutiny in the way that, for example, capital cases are. It is a significant sentence, and the government acknowledges that. It was, however, a sentence that other people with comparable quantities and comparable criminal histories have received. How many other people are there in custody there in the situation that Mr. Spearman's in? Does the government know? I don't. I would be happy to look into that and submit it to the court if the court so desires. I'd be happy to submit either supplemental briefing or something in the nature of a 28J letter, if that would be appropriate. Why don't you, at this point, not do that unless there's a request either from us or from a later panel? If it turns out that we assign it to a later panel. I'm not sure this is relevant, but I wanted to pick up on your brief mention of the four prior felonies. I think I heard you say that they were drug-related. I don't think all four of them were drug-related. I apologize. I believe that the 851 enhancement that was filed listed four, although obviously only two were required for the qualification. So I apologize if I misspoke. It's my understanding that the information is stated four. Oh, yeah. But I don't think they were all drug-related. But it's probably neither here nor there for your argument. Yeah. Okay. Thank you. I looked for the 851 information yesterday and didn't find it. But the pre-sentence report indicates, as does the record, that one was for .1 grams, one was for .3 grams, and one was for 7.7 grams. Of the three priors that are discussed in the pre-sentence report, two of those are discussed in the record in this case, I believe. I see. Okay. The intellectual disconnect on the Apprendi issue has to do with whether we're on appeal or whether we're looking at this as a sentencing the judge is doing after the jury deliberated and made the jury findings that it did in this actual case. And in this actual case, the jury instructions required the jury to find a measurable quantity. There was a lesser included instruction if they found there was no intent to distribute. But there is nothing to show whether they found the big 49-gram quantity plus either of the other two quantities to be what he intended to distribute, just that he did intend to distribute some measurable quantity. So if we were looking at that issue as the sentencing judge, there's no question that Apprendi would preclude the enhanced penalties. If we're looking at it as if we were on appeal at the time, I still think it's a much closer question given that it was controverted and the evidence was not overwhelming. Although the panel to which this may go said, if I could use the very word, said the evidence was overwhelming. But we also have controverted in Cotton. So I think we at least have that argument that if we're looking at it as an appellate standard, I still think we have an argument that it's not met. But I say we're not even looking at it as an appellate standard. If you're looking at it, if you get to where you want to get, we simply go straight to the district judge for an initial sentencing rather than an appellate review of a sentence imposed. The habeas vote and the appeal vote have sailed. And where Mr. Spearman is is with a motion to recall the mandate, which puts him anew at resentencing, or the avenue of going through the crack cocaine retroactive guideline amendment, which brings him almost anew if my interpretation of Hicks is correct. Okay. Well, you're over. Yes. If you've got one last thought with which you would like to leave us. The only thing is that the judge, when he made this recommendation to the court, or refused to make the recommendation to the court, he thought he could not change the sentence. And as argued in the opening brief, I think he was incorrect. And I'd like a district court judge who knows that he's incorrect to have the opportunity to advise this court of his or her position. Okay. Thank you very much. I thank both sides for their argument. And I'm not sure whether you'll have an opportunity to make the same argument again. The case is now submitted for decision. Thank you.
judges: Fletcher, Gould, Pollak